# In the United States Court of Federal Claims

No. 12-909C

**This Opinion Will Not Be Published in the U.S. Court of Federal Claims Reporter Because It Does Not Add Significantly to the Body of Law.**

(Filed:  February 18, 2015)

_____

|  |  |
|---|---|
| TIM FARRELL and NANCY FARRELL, | * |
|  | * |
| Plaintiffs, | * |
|  | * |
| v. | * |
|  | * |
| THE UNITED STATES, | * |
|  | * |
| Defendant. | * |
|  | * |
|  | * |

_____

**OPINION**

_____

**ALLEGRA, Judge:**

This case has its genesis in a home construction loan made by the Rural Housing Service (RHS), an agency of the United States Department of Agriculture (USDA), to plaintiffs Tim and Nancy Farrell.  Defendant has moved to dismiss the case under RCFC 12(b)(1) and 12(b)(6).  For the reasons that follow, the court hereby **GRANTS** defendant's motion.

**I.   BACKGROUND**

A brief recitation of the facts provides necessary context.[1]

Section 502 of the Housing Act of 1949, 42 U.S.C. § 1471 *et seq.*, authorizes RHS to administer loans to help low-income and very low-income persons who cannot find credit from other sources obtain adequate housing.  *See Austin v. United States*, 118 Fed. Cl. 776, 778 n.3

---

[1] These facts are primarily drawn from plaintiffs' amended complaint and the exhibits referenced or attached thereto and, for the purpose of this motion, are assumed to be correct.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007).

(2014); 7 C.F.R. §§ 3550.2, 3550.52.  The regulations governing the construction of houses under this program are found at 7 C.F.R. §§ 1924.1-1924.50.

Under those regulations, the borrower selects a contractor to build the house either through competitive bidding or by negotiating a contract directly with a contractor.  *Id*. § 1924.6(a)(10).  Borrowers must select contractors who are qualified to perform the work.  *Id*. § 1924.6.  If the award is by competitive bidding, RHS works with the borrower to evaluate the amount of the bids and the conditions listed in the invitation for bids.  *Id*. § 1924.6(a)(11).  If a borrower negotiates the price with the contractor directly, RHS must review the proposed contract and consent to the choice.  *Id*. § 1924.6(a)(10).  However, the contractor is ultimately selected by the borrower, who contracts directly with the contractor for the construction of the home.  *Id*. § 1924.6(a)(11).  "The United States . . . will not become a party to a construction contract or incur any liability under it."  *Id*. § 1924.6(a)(1).[2]

In 2009, the Farrells qualified for a loan of $127,300 to construct a single family home.  On February 19, 2010, the Farrells and RHS signed a loan agreement, secured by a deed of trust on the property.  Plaintiffs developed a set of specifications for the home and selected Revelstoke Custom Homes, LLC (Revelstoke) to carry out the construction.  Revelstoke requested approval from the USDA to participate in the program, as required by the regulations governing the section 502 loan program.  *See* 7 C.F.R. § 1924.6(a)(10).  After the USDA approved Revelstoke as a qualified builder, the Farrells and Revelstoke entered into a contract to construct the home.

During the construction of the Farrells' home, from March 29, 2010, through June 21, 2010, RHS performed over ten inspections of the construction site.  After paying Revelstoke over half of the loan amount, RHS recognized that there were construction deficiencies and demanded that Revelstoke remedy these before it would advance any further construction funds.  Revelstoke, however, refused to remedy the defects and, in July 2010, abandoned the job.  The home, which was to be completed by June 2010, remained unfinished.  The Farrells and RHS solicited bids to complete the work.  Revelstoke filed a lien against the Farrells' property for approximately $80,000.  Roughly $54,000 in subcontractor liens were also filed against the property.

On October 22, 2010, Revelstoke filed a foreclosure action on its lien in Idaho state court, naming as parties the Farrells, the United States, and the subcontractors who had filed liens against the property.  *See Revelstoke Custom Homes, LLC v. Farrell*, No. CV-2010-0002028 (Idaho Dist. Ct. Oct. 22, 2010) (the foreclosure action).  On December 3, 2010, this foreclosure action was removed to Federal district court.  *Revelstoke Custom Homes, LLC v. Farrell*, No.

---

[2] RHS makes periodic inspections of the construction work as the project progresses in order to "protect the security interest of the government."  *Id*. § 1924.9(a).  The borrower is responsible for "making inspections necessary to protect the borrower's interest."  *Id*.  Furthermore, the regulations expressly provide that RHS's inspections "are not to assure the borrower that the house is built in accordance with the plans and specifications.  The inspections create or imply no duty or obligation to the particular borrower."  *Id*.

2:10-CV-00599-BLW (D. Idaho 2010).  The United States filed a motion for summary judgment, seeking a judgment that its deed of trust had priority over Revelstoke's lien.

In June 2011, the Farrells' submitted a Documentation of Construction Complaint/ Request for Compensation for Construction Defects to the USDA, requesting that RHS remedy major construction defects.  RHS refused to do so and instead informed the Farrells of their appeal rights and their right to submit the dispute to mediation.  The Farrells requested mediation with RHS, which was conducted on October 17, 2011.[3]  On that day, the parties reached a mediation agreement which included, in relevant part, the following terms:

> Step #1 - The [Farrells] agree to withdraw their appeal of the denial for construction defect compensation.
>
> Step #2 - The issue confronting the USDA and the [Farrells] will be tabled until the question of lien holders is determined by the Court.
>
> Step #3 - Should the USDA be determined to be in a 1st position it will release the remaining funds available (approximately $68,000.00/through applicable regulations) for construction completion and defect correction.
>
> \* \* \* \* \*
>
> Step #6 - Should the USDA not be in a first position, the parties will meet in mediation to determine what to do next.

On November 4, 2011, the Farrells filed an administrative tort claim with the USDA.  They then filed a complaint against the United States in Idaho state court, raising four claims: (i) breach of the mediation agreement; (ii) breach of the lending agreement; (iii) negligence; and (iv) negligent infliction of emotional distress.  *Farrell v. United States*, No. CV-2012-0000543 (Idaho Dist. Ct. Mar. 26, 2012).  The case was removed to the United States District Court for the District of Idaho.  *Farrell v. United States*, No. 2:12-CV-265-REB (D. Idaho 2012).

On November 18, 2011, in the foreclosure action, counsel for Revelstoke was allowed to withdraw from the case.  Thereafter, Revelstoke failed to appear in the allotted time and its claims were dismissed, with prejudice.  *Revelstoke Custom Homes, LLC v. Farrell*, No. 2:12-CV-00599-BLM, 2011 WL 6304839 (D. Idaho Dec. 16, 2011).  The district court did not rule on the priority of the remaining liens and instead remanded the case back to Idaho state court.  The time for appeal for Revelstoke expired prior to the filing of this suit.

---

[3] Title 7, C.F.R. § 3550.4 provides that "[w]henever RHS makes a decision that is adverse to a participant, RHS will provide the participant with written notice of such adverse decision and the participant's rights to a USDA National Appeals Division hearing in accordance with 7 CFR part 11."

On December 29, 2011, the Farrells informed the USDA that they believed that Revelstoke no longer possessed a valid lien on the property and requested that RHS begin the process of completing the home construction. On January 17, 2012, RHS informed the Farrells that it did not intend to release the remaining funds or otherwise complete the home construction. On January 30, 2012, the Farrells informed RHS that if the funds were not released they would file suit. On February 2, 2012, RHS informed the Farrells that it would not release the remaining construction funds unless the Farrells could demonstrate that the funds were sufficient to obtain a certificate of occupancy for the home. On February 8, 2012, RHS informed the Farrells that it would only release the remaining funds if the Farrells could demonstrate that the funds were sufficient to repair all the defects and finish the home; RHS indicated that if that was not the case, the Farrells would have to modify their plans to allow for completion.

On February 8, 2012, the Farrells informed RHS that they believed that the mediation agreement did not require them to demonstrate that the remaining funds would be sufficient to complete the home. Nevertheless, the Farrells indicated that they believed that the funds would be sufficient to complete the home to a point that would allow them to occupy it. They volunteered to have their contractor work with RHS to develop new specifications that would allow the home to be completed. RHS did not respond.

In the U.S. district court, the United States filed a motion to dismiss, arguing that the Farrells alleged a contract claim and tort claims that were "woven into and derive[d] from the same facts as the breach of contract claim," and, therefore, that jurisdiction was proper in the United States Court of Federal Claims. On December 11, 2012, the district court agreed and dismissed the case without prejudice. *Farrell v. United States*, No. 2:12-CV-265-REB (D. Idaho Dec. 11, 2012).

On December 26, 2012, plaintiffs filed suit in this court. On December 27, 2012, the Idaho state court ruled on the foreclosure action on remand, finding that the deed of trust issued in favor of the United States had first priority on the Farrells' property. *Revelstoke Custom Homes, LLC v. Farrell*, No. CV-2010-2028 (Idaho Dist. Ct. Dec. 27, 2012). The remaining subcontractors' liens were all determined to be inferior to that of the United States. *Id*. On April 16, 2013, the Farrells filed their first amended complaint in this court, averring four claims: (i) breach of the mediation agreement; (ii) breach of the lending agreement; (iii) negligence; and (iv) negligent infliction of emotional distress. Plaintiffs seek monetary damages, a preliminary injunction ordering RHS to release the remaining construction funds, and attorneys' fees.

On June 17, 2013, defendant filed a motion to dismiss counts one and four of the plaintiffs' complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), or alternatively, to dismiss all four of the plaintiffs' counts for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). Briefing on this motion has since been completed. Oral argument is deemed unnecessary.

## II.     DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted); *see also Twombly*, 550 U.S. at 554-55; *Compliance Solutions Occupational Trainers, Inc. v. United States*, 118 Fed. Cl. 402, 405 (2014). In particular, the plaintiffs must establish that the court has subject-matter jurisdiction over their claims. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [ ] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 208 (2011), *aff'd*, 541 Fed. Appx. 974 (Fed. Cir. 2013). The plaintiffs' factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570; *see also Dobyns v. United States*, 91 Fed. Cl. 412, 422-28 (2010) (examining this pleading standard). Nevertheless, the Federal Circuit has reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *see also Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009), *cert. denied*, 561 U.S. 1006 (2010); *Petro–Hunt, LLC v. United States*, 90 Fed. Cl. 51, 68 (2009).

Plaintiffs' complaint primarily is founded upon the Tucker Act, 28 U.S.C. § 1491. Under the Tucker Act, an action may be maintained in this court only if it is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It is well-established that breach of contract actions are covered by this grant of jurisdiction. *See Keene Corp. v. United States*, 508 U.S. 200, 205 (1993); *Cunningham v. United States*, 748 F.3d 1172, 1175 (Fed. Cir. 2014). However, the jurisdiction of this court under the Tucker Act is "limited to actual, presently due money damages from the United States." *United States v. Testan*, 424 U.S. 392, 398 (1976) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)); *see also Schott v. Dept. of Transp.*, 229 Ct. Cl. 853, 854 (1982); *Lummi Tribe of Lummi Reservation v. United States*, 99 Fed. Cl. 584, 602 (2011). This requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself. *King*, 395 U.S. at 3; *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc); *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).

The court lacks jurisdiction to consider plaintiffs' amended complaint for breach of the mediation agreement because that claim is not for "actual, presently due money damages." *King*, 395 U.S. at 3; *Todd*, 386 F.3d at 1093; *Terran ex rel. Terran v. Sec'y of Health & Human Servs.*,

195 F.3d 1302, 1309 (Fed. Cir. 1999), *cert. denied*, 531 U.S. 823 (2000).[4] To maintain a claim for money damages for the alleged breach of an agreement with defendant, the agreement must "clearly and unmistakably subject[ ] the government to monetary liability for any breach." *Sanders v. United States*, 252 F.3d 1329, 1335 (Fed. Cir. 2001). Plaintiffs aver that defendant breached the mediation agreement because defendant refused to release the remaining construction funds. However, under the terms of the mediation agreement, a condition precedent existed to defendant's duty to release the remaining funds, *to wit*, that the USDA be determined to be the first priority lienholder on the Farrells' property. That condition did not arise until after the lawsuit here was filed – there was no duty due when the action here was commenced, *i.e.*, on December 26, 2012. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997); *see also Haddon Hous. Assocs., Ltd. P'ship v. United States*, 711 F.3d 1330, 1338 (Fed. Cir. 2013).[5] Because defendant had no duty to perform under the mediation agreement, it did not breach that agreement.[6] Accordingly, count one of the amended complaint must be dismissed for lack of jurisdiction.

Nor have plaintiffs shown that there was any breach of the lending agreement. Plaintiffs allege that defendant breached the lending agreement by approving Revelstoke and failing to require that contractor to remedy the construction defects that were evident during the USDA's inspections of the site. But, plaintiffs do not identify any provision in the lending agreement that created these duties. Rather, plaintiffs concede that "the written agreement does not provide that the United States will conduct inspections for the Farrells' benefit, nor does it provide that the United States is responsible to make sure the Farrells' choice of contractor was competent or financially sound." Furthermore, plaintiffs argue that this count is not a contract claim at all, but a tort claim based on an assumption of duties outside of the contract. But, this newly-alleged tort claim clearly falls outside of this court's jurisdiction. *See* 28 U.S.C. § 1491(a)(1); *Jefferson v. United States*, 104 Fed. Cl. 81, 89 (2012); *Hernandez v. United States*, 93 Fed. Cl. 193, 197–98 (2010); *Marlin v. United States*, 63 Fed. Cl. 475, 476 (2005). Thus, count two of the amended complaint must also be dismissed, this time under RCFC 12(b)(6).

---

[4] Contrary to the claims made in plaintiffs' brief, the issue of this court's jurisdiction was never litigated in the United States District Court for the District of Idaho. Rather, plaintiffs' case was dismissed without prejudice, leaving the jurisdictional issue to be resolved by this court. Accordingly, plaintiffs cannot rely upon *res judicata* or collateral estoppel as a basis upon which to avoid relitigating this jurisdictional issue. *See Killeen v. Office of Personnel Mgmt.*, 558 F.3d 1318, 1323 (Fed. Cir. 2009); *Mother's Rest. Inc. v. Mama's Pizza, Inc*., 723 F.2d 1566, 1569 (Fed. Cir. 1983). The district court's decision provides no preclusive effect in this regard.

[5] That plaintiffs' amended complaint was filed after the condition precedent was met does not cure the jurisdictional defects in their original complaint. *See Keene Corp.*, 508 U.S. at 207; *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).

[6] Jurisdiction must be established at the time a complaint is filed, and "later events may not create jurisdiction where none existed at the time of filing." *GAF Bldg. Materials,* 90 F.3d at 483.

Plaintiffs' remaining claims for relief are likewise unpersuasive.  In particular, this court cannot provide equitable relief to plaintiffs in the form of a preliminary injunction that would require, *inter alia*, defendant to be obliged to release the remaining funds.  "'Except in strictly limited circumstances,' which are inapplicable here, the Tucker Act does not authorize the Court of Federal Claims to order equitable relief such as specific performance, a declaratory judgment, or an injunction."  *Smalls v. United States*, 87 Fed. Cl. 300, 307 (2009) (quoting *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000)); *see also Speed v. United States*, 97 Fed. Cl. 58, 68 (2011).  In this type of case, this court cannot grant nonmonetary equitable relief such as an injunction or declaratory judgment, or specific performance.  *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1294 (Fed. Cir. 1999)  ("[The Court of Federal Claims] cannot grant nonmonetary equitable relief such as an injunction, a declaratory judgment or specific performance." (quoting *Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. 134, 138 n.1 (1972)); *see also Phillips v. United States*, 77 Fed. Cl. 513, 519 (2007) ("It is well established that this court does not have the power to grant general equitable relief.") (citing *Doe v. United States*, 372 F.3d 1308, 1312-14 (Fed. Cir. 2004)); *Biddulph v. United States*, 74 Fed. Cl. 765, 768 (2006).

Finally, plaintiffs' claims for negligence and negligent infliction of emotional distress must be dismissed for failure to state a claim (or, arguably, lack of jurisdiction).  To be sure, defendant wrongly suggests that there are no circumstances in which this court can award damages for the negligent infliction of emotional distress.  *See Bohac v. Dep't of Agric.*, 239 F.3d 1334, 1340 (Fed. Cir. 2001); *Dobyns v. United States*, 118 Fed. Cl. 289, 324 (2014).  But, the situation here does not warrant the recovery of such damages as the alleged breach here was not the sort that would make serious emotional distress likely.  *See Bohac*, 239 F.3d at 1340; *Dobyns*, 118 Fed. Cl. at 324; *Mastrolia v. United States*, 91 Fed. Cl. 369, 381 (2010); *see also* Restatement (Second) of Contracts § 353.  Rather, this case presents the more typical one in which damages sounding in tort – including negligence and negligent infliction of emotional distress – are unavailable under the Tucker Act.  *See* 28 U.S.C. § 1491(a); *Bohac*, 239 F.3d at 1340 (negligent infliction of emotional distress); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (negligence); *Hicks v. United States*, 118 Fed. Cl. 76, 81 (2014) (negligence); *Johnson v. United States*, 107 Fed. Cl. 379, 386-87 (2012) (negligent infliction of emotional distress); *Williams v. United States*, 91 Fed. Cl. 560, 564-65 (2010) (negligent infliction of emotional distress).

### III.   CONCLUSION

The court will not gild the lily.  Based on the foregoing, the court hereby **GRANTS** defendant's motion.  The Clerk shall dismiss plaintiffs' complaint.  No costs.

**IT IS SO ORDERED**.

s/Francis M. Allegra
Francis M. Allegra
Judge
